IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-419-FL

| | |
|---|---|
| JAMES E. IVEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings. (DE's 36 & 42). The time for either party to file any further responses has expired, and the matter is now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), this matter is before the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-36) be GRANTED, and that Defendant's Motion for Judgment on the Pleadings (DE-42) be DENIED. Specifically, it is RECOMMENDED that the matter be remanded, pursuant to sentence six of 42 U.S.C. § 405(g), for more specific findings of fact as detailed below.

**I. Statement of the Case**

Prior to the applications at issue in this matter, Plaintiff filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") on August 12, 2002. (Tr. 10). Plaintiff was found to be disabled for a closed period ranging from March 15, 2002 until

1

November 2, 2004. *Id.* This closed period of disability was related to, *inter alia*, a fracture of Plaintiff's right clavicle. *Id.* at 82.

Thereafter, Plaintiff filed another application for DIB and SSI on April 25, 2006. *Id.* at 10. Those applications were denied at the initial level and Plaintiff did not pursue them further. *Id.*

The instant matter relates to applications for DIB and SSI filed by Plaintiff in February, 2007. *Id.* These applications allege that Plaintiff has been disabled since March 15, 2002. *Id.* These applications were denied initially and upon reconsideration. *Id.* A hearing was held before an Administrative Law Judge ("ALJ"), who determined that Plaintiff was not disabled in a decision dated February 23, 2010. *Id.* at 10-21.

Plaintiff requested that the Social Security Administration's Office of Hearings and Appeals ("Appeals Council") review the February 23, 2010 decision on May 13, 2010. *Id.* at 6, 155-156. This application noted that evidence not considered by the ALJ was being submitted. Specifically, Plaintiff's counsel noted:

> The additional evidence, which the claimant now submits in support of reversal, includes objective psychological testing, academic testing and I.Q. testing that has not been previously available to the claimant, either due to his uninsured status or the lack of mental health services at relevant times. Secondly, the additional evidence includes the [assessment] of Ann Hendricks, a Board Certified Addictionologist and Psychiatrist, who is uniquely qualified to diagnose, evaluate, and treat [Plaintiff].

*Id.* at 156.

The Appeals Council denied Plaintiff's request for review on August 26, 2010, rendering the ALJ's determination as Defendant's final decision. *Id.* at 1-5. The new evidence submitted by Plaintiff was not specifically addressed by the Appeals Council. Rather, the Appeals Council

noted that: "we considered . . . the additional evidence . . . [and] found that this information does not provide a basis for changing the [ALJ's] decision." *Id*. at 2. Plaintiff filed the instant action on October 18, 2010. (DE-6).

## II. Standard of Review

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .

42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

3

## III. Analysis

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process which must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

Furthermore, if an ALJ finds that a claimant, who has medical evidence of drug addiction or alcoholism, is disabled, the ALJ must then determine whether the addiction or alcoholism is a contributing factor material to the determination of disability. 20 C.F.R. §§ 404.1535(a) and 416.935(a). The key factor is whether the ALJ would still find the claimant disabled if the drug or alcohol use stopped. 20 C.F.R. §§ 404.1535(b)(1) and 416.935(b)(1). To make this determination, the ALJ evaluates which of the claimant's current physical and mental limitations would remain if the claimant stopped using drugs or alcohol and then determines whether any or all of the remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b) (2) and 416.935(b)(2). If the ALJ determines that the remaining limitations would not be disabling, then the ALJ will find that the drug addiction or alcoholism is a material contributing factor and a determination of

disability is prohibited. 20 C.F.R. §§ 404.1535(b)(2)(i) and 416.935(b)(2)(i). Conversely, if the ALJ determines that the claimant's non-substance related limitations are disabling, then the claimant is disabled independent of the drug addiction or alcoholism. 20 C.F.R. §§ 404.1535(b)(2)(ii) and 416.935(b)(2) (ii).

In the instant action, the ALJ employed the five-step evaluation. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 15, 2002. (Tr. 13). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: 1) allopurinol-resistant gout; 2) an affective disorder; and 3) a polysubstance abuse disorder. *Id.* During step three, the ALJ determined that Plaintiff's mental impairments were severe enough to meet or medically equal Listings 12.04. and 12.09 of 20 CFR Part 404, Subpart P, Appendix 1. *Id.*

> Specifically, the ALJ found:
>
>> To summarize, having considered the objective medical evidence, the claimant's subjective complaints, and the opinions of treating, examining, and non-examining physicians, the Administrative Law Judge finds that the claimant's mental impairments, including the substance use disorders, meet Listings 12.04 and 12.09. The "paragraph A" criteria are satisfied because the claimant has an affective disorder with disturbance of mood as evidenced by a bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes. He also has behavioral changes associated with the regular use of substances that affect the central nervous system with evidence of an affective disorder. To satisfy the "paragraph B" criteria, the impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.
>>
>> In activities of daily living, the claimant has moderate restriction. In social

5

functioning, the claimant has marked difficulties. With regard to concentration, persistence, or pace, the claimant has marked difficulties. As for episodes of decompensation, the claimant has experienced one to two episodes of decompensation. Because the claimant's mental impairments, including the substance use disorders, cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria are satisfied.

The claimant's clinical abnormalities and resulting functional limitations meet the criteria of Listings 12.04 and 12.09 when he is using alcohol and drugs. . .

If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments . . .

In determining the extent to which any mental limitations would remain if the substance use was stopped, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.

The first functional area is activities of daily living. In this area, the claimant would have no limitation if the substance use was stopped. The next functional area is social functioning. In this area, the claimant would have mild limitation if the substance use was stopped. The third functional area is concentration, persistence, or pace. In this area, the claimant would have mild limitation if the substance use was stopped. The fourth functional area is episodes of decompensation. In this area, the claimant would experience no episodes of decompensation if the substance use was stopped. Because the remaining mental limitations would cause no more than "mild" limitation in any of the first three functional areas and "no" limitation in the fourth area, they would be non-severe if the substance use was stopped (20 CFR 404. 1520a(d)(l) and 416.920a(d)(l)).

*Id.* at 14-21.

The ALJ then proceeded with step four of his analysis and determined that Plaintiff was unable to perform any past relevant work. *Id.* at 20. Because of this finding, the burden shifted to Defendant to show that other work is available in the national economy that Plaintiff could

perform.  Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).

At step five the ALJ determined that Plaintiff's polysubstance use disorder was a contributing factor material to the determination of disability and that Plaintiff would not be disabled if he stopped his substance use.  (Tr. 21).  Likewise, the ALJ found that, if Plaintiff stopped his substance use, there would be a significant number of jobs in the national economy that Plaintiff could perform.  Id. at 20.  Accordingly, the ALJ ultimately determined that Plaintiff was not under a disability at any time through February 23, 2010.  Id.  at 21.

As noted above, after the ALJ's decision, Plaintiff submitted additional evidence to the Appeals Council.  Plaintiff contends that he submitted the following evidence to the Appeals Council:  1) a psychological examination conducted by Tammy S. Juntunen, M.A., LPA; 2) an additional opinion from one of Plaintiff's treating physicians—Dr. Anne Hendricks; and 3) a February 6, 2008 decision by the North Carolina Department of Health and Human Services ("NCDHHS") that Plaintiff qualified for Medicaid by virtue of meeting the requirements of Listing 12.05C.  (DE-37 & 37-1).   In a letter from Plaintiff's counsel to Defendant dated May 13, 2010, portions of this evidence are discussed in some detail. (Tr. 155-156).   The letter specifically requested that the Appeals Council consider this additional evidence during its review of the ALJ's decision.  Id.  However, this evidence was not specifically discussed by the Appeals Council when it declined to review the ALJ's decision.  Id. at 1-4.  Although the Appeals Council acknowledged receipt of counsel's letter, it makes no mention of the attached exhibits.  Id. at 4.  In response to this, Defendant makes the following argument:

> the Appeals Council did not include that evidence in the record and did not indicate that it had ever received that evidence. In its determination, the Appeals Council noted what evidence it considered (Tr. 2, 4), and there is no mention of this physician evidence now submitted to this Court. The letter submitted to the Appeals Council by Mr. Ivey's attorney, dated May

7

> 13, 2010, indicates that this evidence was enclosed (Tr. 2, 4, 156). Given that the Appeals Council clearly received this letter, the only way they would not have also received the evidence enclosed is if the evidence was not actually attached or enclosed. It stands to reason, therefore, that Mr. Ivey's counsel did not submit this evidence.
>
> (DE-43, pg. 11).

This reasoning is specious. Were the undersigned to accept this argument, a plaintiff would never be able to establish that the Appeals Council failed to consider additional evidence. Defendant could always argue that a plaintiff failed to attach any exhibits because "[i]t stands to reason" the Appeals Council would have specifically addressed all relevant evidence. The undersigned refuses to adopt this position.

The Appeals Council is required by 20, Code of Federal Regulation, Part 416.1470(b), to review certain decisions of an ALJ. In pertinent part, the regulation provides:

> (b) In reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. In reviewing decisions other than those based on an application for benefits, the Appeals Council shall evaluate the entire record including any new and material evidence submitted. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.
>
> 20 C.F.R. § 416.1470(b). *See also*, Morrison v. Astrue, 2011 WL 1303651, * 4 (W.D.N.C. March 31, 2011).

When the Appeals Council incorporates new evidence into the administrative record, the reviewing court considers the record as a whole, including the new evidence, to determine whether the Commissioner's decision is supported by substantial evidence. Wilkins v. Sec'y of Health & Human Servs., 953 F.2d 93, 96 (4th 1991). Generally, the Appeals Council is not required to

articulate a detailed assessment of any additional evidence submitted by a claimant.[1] Freeman v. Halter, 15 Fed. Appx. 87 (4th Cir. 2001)(unpublished); Hollar v. Commissioner of Social Sec. Admin., 194 F.3d 1304 (4th Cir. 1999)(unpublished). However, while detailed reasons for rejecting additional evidence which meets the Wilkins criteria may not be required by the social security regulations, some explanation is necessary to allow the court to conduct a meaningful review. Sapienaz v. Astrue, 2010 WL 3782014, * 4 (D.S.C. August 31, 2010). For example, the Fourth Circuit has held that a statement by the Appeals Council indicating "only that the additional evidence had been considered, was plainly deficient." Jordan v. Califano, 582 F.2d 1333, 1335 (4th Cir. 1978). Here, Defendant fails to even acknowledge receipt of the additional evidence, much less explain the consideration it was given.

In Melkonyan v. Sullivan, the Supreme Court noted:

> [W]e [have] examined closely the language of § 405(g) and identified two kinds of remands under that statute: (1) remands pursuant to the fourth sentence, and (2) remands pursuant to the sixth sentence. The fourth sentence of § 405(g) authorizes a court to enter "a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." . . .
>
> The sixth sentence of § 405(g) . . . "describes an entirely different kind of remand." The district court does not affirm, modify, or reverse the Secretary's decision; it does not rule in any way as to the correctness of the administrative determination. Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding. The statute provides that following a sentence six remand, the Secretary must return to the district court to "file with the court any such additional or modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.

---

[1] Courts in the Fourth Circuit, noting the tension between Wilkins and the unpublished decisions of Freeman and Hollar, appear to conflict regarding whether the Appeals Council must articulate the reasons for the assessment of or failure to assess additional evidence. See, Sapienaz v. Astrue, 2010 WL 3782014, * 4 (D.S.C. August 31, 2010).

Melkonyan v. Sullivan, 501 U.S. 89, 97-98 (1991).

To merit remand, this evidence must meet the requirements of sentence six of 42 U.S.C. § 405(g) ("sentence six"). Sentence six permits remand "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). There are accordingly three distinct requirements under sentence six. *See, e.g.*, Nuckles v. Astrue, 2009 WL 3208685, at *4 (E.D.N.C. 5 Oct. 2009). First, the evidence must be new. Evidence is deemed new if it is not duplicative or cumulative of evidence already in the record. Wilkins, 953 F.2d at 96. Evidence that was available during the administrative hearing but not submitted does not qualify as new evidence. Wilkins v. Sec'y of Health and Human Servs., 925 F.2d 769, 774, *rev'd on other grounds*, 953 F.2d 93 (4th Cir. 1991) (*en banc*).

Second, the evidence must be material. Evidence is material if there is a reasonable possibility that it would have changed the outcome. *See*, Wilkins, 953 F.2d at 96. Evidence is not material if it does not relate to the time period that was before the Commissioner. *See*, Edwards v. Astrue, 2008 WL 474128, at *9 (W.D.Va. February 20, 2008)("The [new records] do not relate back to the relevant time period as they were both done over 6 months after the ALJ rendered his decision.").

Third, there must be good cause for failing to submit the evidence earlier. This requirement for good cause was added by Congress in 1980. *See*, Social Security Disability Amendments of 1980, P.L. 96-265 § 307, 94 Stat. 441 (1980). The courts have recognized that Congress' intent was to permit remands pursuant to sentence six on a very limited basis. Rogers v. Barnhart, 204 F.Supp.2d 885, 892 (W.D.N.C. 2002) (" 'Congress made it unmistakably clear' that it intended to limit remands for 'new evidence.' ")(*quoting* Melkonyan v. Sullivan, 501 U.S. 89, 99-100 (1991)).

10

The burden of showing that the good-cause and other requirements of sentence six are met rests with the claimant. *See*, Fagg v. Chater, 106 F.3d 390, 1997 WL 39146, at *2 (4th Cir. Feb. 3 1997).

Notably, however, "[w]hen a claimant seeks to present new evidence to the Appeals Council, she is not required to show good cause for failing to present the evidence earlier." Wilkins, 953 F.2d at 96 n. 3.[2]

Thus, the undersigned must determine whether the additional evidence submitted by Plaintiff was "new and material." As part of this analysis, the evidence submitted by Plaintiff to the Appeals Council shall now be summarized.

Tammy S. Juntunen, M.A., LPA examined Plaintiff in January and February of 2010. Upon examination, Plaintiff earned a Full Scall IQ ("FSIQ") score in the lower extreme of the borderline range, indicating that his true FSIQ is probably in the range of 67-75. (DE 37-1, pg. 2, 7). Ultimately, Plaintiff was diagnosed with: 1) bipolar I disorder; 2) generalized anxiety disorder; and 3) borderline intellectual functioning. *Id.* at 8. Notably, his alcohol and cocaine dependence were described as being in "full remission." *Id.* Ms. Juntunen also rated Plaintiff's Global Assessment of Functioning ("GAF") at 40.[3] *Id.*

On April 26, 2010, Dr. Hendricks stated that Plaintiff qualified for consideration of mild

---

2 In the alternative, the undersigned finds that Plaintiff has demonstrated good cause for failing to present the evidence earlier: namely, that counsel intended to timely submit these materials to the Appeals Council and inadvertently failed to do so. Furthermore, by attaching the materials to the instant motion, Plaintiff has "made at least a general showing of the nature of the new evidence." *See*, Borders v. Heckler, 777 F.2d 954, 955 (4th Cir, 1985).

3 The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders Fourth Edition, ("DSM–IV"), 32 (American Psychiatric Association 1994). A GAF score of 31–40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. *See*, DSM–IV at 32. *See also*, Day v. Astrue, 2011 WL 2604896, *3, fn. 4-5 (W.D.Va. April 26, 2011).

11

mental retardation . *Id.* at 9. She also noted that Plaintiff "had achieved and maintained sobriety for the past five weeks." *Id.* at 10. Notably, Dr. Hendricks also opined that Plaintiff was unable to engage in productive employment despite his sobriety. *Id.* Specifically, Dr. Hendricks observed:

> In my opinion it is not possible for Mr. Ivey to engage in productive employment. Despite sobriety, he remains symptomatic and his frustration level, anxiety and irritability wax and wane in the their degree of intensity. These emotional issues would most certainly lead to conflict with supervisors and peers in the work place and would end in work termination. I have myself recently experienced this mood lability and it not easy to manage. If he is functioning like this with a physician. he would definitely do the same or worse in the workplace. His Mild Mental Retardation supports his complaints of poor memory. his frustration that he has to be told how to do basic tasks or requires supervision when performing the tasks on his step-father's farm. His problem-solving skills are significantly compromised by his intellectual disability and are not anticipated to improve very much.
>
> *Id.*

Finally, on February 6, 2008, NCDHHS determined that Plaintiff qualified for Aid to the Disabled-Medical Assistance because he met the disability requirement referenced in Listing 12.05 (Mental Retardation). Social Security Ruling 06-03p states:

> Our regulations at 20 CFR 404.1527(e) and 416.927(e) make clear that the final responsibility for deciding certain issues, such as whether you are disabled, is reserved to the Commissioner (see also SSR 96-5p, "Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner"). However, we are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies (20 CFR 404.1512(b)(5) and 416.912(b)(5)). Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.
>
> SSR 06-03-p.

Thus, while the NCDHHS decision is not binding on the Defendant, an ALJ should nonetheless "explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases." SSR 6-03p. *See also,* Watson v. Astrue, 2009 WL 2423967 (E.D.N.C. August 6, 2009)(ordering remand when ALJ failed to analyze prior NCDHHS decision).

The undersigned hereby finds that the evidence Plaintiff submitted to the Appeals Council: 1) was not duplicative or cumulative of evidence already in the record; and 2) could possibly change the outcome in this matter. Thus, a remand pursuant to sentence six is appropriate.

Accordingly, it is HEREBY RECOMMENDED that the decision dated February 23, 20101 be remanded for the purpose of considering the new and material evidence presented by Plaintiff.

## IV. Conclusion

For the reasons discussed above, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-36) be GRANTED, and that Defendant's Motion for Judgment on the Pleadings (DE-42) be DENIED. Specifically, it is RECOMMENDED that the matter be remanded, pursuant to sentence six of 42 U.S.C. § 405(g), to permit an ALJ to make additional findings in accordance with the foregoing directives.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Monday, July 25, 2011.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE